Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Liping LIN<br>Petitioner,<br>v.<br>James JANECHA, the Warden of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes;<br><br>Request for Declaratory and Injunctive Relief<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner Liping Lin is a 31-year-old national of the People's Republic of China who has lived in the United States for ten years. She was inspected and admitted on an F-1 student visa in July 2016. She was baptized a Roman Catholic on April 16, 2017, and filed an application for asylum in 2017 based on her religious faith and her fear of persecution in China; it has been pending

ever since — for nine years — unadjudicated. USCIS granted her employment authorization, Card No. IOE0919223109, valid from March 11, 2024 through March 10, 2029; the Social Security Administration issued her a Social Security number; and the State of California issued her a REAL ID-compliant driver's license. She has worked for the same employer group since January 2020 and today manages its Diamond Bar location and a staff of roughly thirty-eight people. Her 2025 Form W-2 reports wages of $56,405.71, on which she paid federal income, Social Security, and Medicare taxes. She has no criminal history of any kind. ICE's own Form I-213 records it in one word: "None." (Ex. 4; Ex. 5 at 1, 4; Ex. 2, Mot. at 1–2.)

2. On August 4, 2026, ICE officers arrested Ms. Lin at Los Angeles International Airport. She was not arriving from abroad and she was not leaving the country. She was at a departing gate with her coworkers, about to board United Airlines Flight 1224 to Honolulu, Hawaii — a domestic flight to an American state — on a company team-building trip her employer had organized. She was given no notice, no hearing, and no review by any neutral decision-maker before her liberty was taken. She has been confined at the Adelanto ICE Processing Center ever since. (Ex. 5 at 2–3; Ex. 2, Mot. at 2.)

3. What makes this case extraordinary is why Respondents took her. They were not looking for her. ICE's own Form I-213 states that Ms. Lin "came to the attention of Enforcement and Removal Operations (ERO) Los Angeles pursuant to a *collateral arrest* from a Transportation Security Administration (TSA) lead referral regarding WANG, Huan (A#232934025)," and that "LIN was *incidentally encountered* during a targeted enforcement operation to locate and apprehend Huan WANG." The form's own "Method of Location/Apprehension" field reads "CA" — collateral arrest. (Ex. 5 at 1, 2 (emphasis added).) Ms. Lin was standing near the person Respondents had come for. That is the entire reason she is in a detention center today.

4. The consequence is that no official, at any stage, ever made an individualized decision about Ms. Lin. Respondents did not decide she should be detained; they encountered her, ran her name, and took her. And when the case reached the Immigration Court, the Court did not decide she should be detained either — it issued her the same twenty-three words it had issued to six other people. At no point in this sequence did any decision-maker actually address the question of whether this woman needed to be jailed.

5. Nor was there anything urgent about it. The Form I-213 states that officers "arrived at Los Angeles International Airport … at approximately 0800 hours" and arrested Ms. Lin "[a]t approximately 1159 hours" — nearly four hours later. In that window they conducted a field interview, ran law-enforcement record checks on a person they had not come to find, and decided to arrest her. Respondents had time to build a file on Ms. Lin from scratch. They had time to seek review by a neutral decision-maker. They did the first and not the second. (Ex. 5 at 3.)

6. The same record shows how she behaved when approached. "Officers approached the individuals, identified themselves as ICE/Immigration, and conducted a field interview. One subject identified herself as LIN; LIN presented a California Identification Card." She was arrested "without incident." (Ex. 5 at 3.) A person intent on absconding does not stand at an airport gate, give federal officers her true name, and hand them her government-issued identification.

7. On August 25, 2026, Immigration Judge Steven Marcus denied Ms. Lin bond on a pre-printed checkbox form. Its entire substantive reasoning is one sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." (Ex. 2, Order at 1.) Ms. Lin had asked for a bond of $1,500. The order does not mention that figure, or any figure, or her ability to pay any figure. It found that no amount of bond would do, without ever identifying an amount.

8. It could not have engaged with her record, because those twenty-three words were not written for her. Exhibit 3 collects seven bond denial orders entered by this same Immigration Judge at the same court. Six of them — every order in the compendium entered on or after July 24, 2026 — contain that identical sentence, word for word, together with the identical pre-printed assurance that "[t]he Court conducted an individualized bond and custody redetermination hearing." Ms. Lin's order is the seventh. Two of the six issued on a single day, August 21, 2026, to two unrelated respondents represented by two different attorneys; those two orders are identical to each other and to hers. (Ex. 3, Tabs 3-A, 3-G.) Eight respondents, seven different attorneys of record, nothing in common but twenty-three words. A finding that does not vary when the facts vary is not a finding about the facts.

9. Ms. Lin was arrested in the interior of the United States, at a domestic departure gate, ten years after she was admitted. She never departed the United States in connection with this trip and never presented herself at any port of entry seeking admission. She is not an "arriving alien" or

an applicant for admission under 8 U.S.C. § 1225. DHS charged her as a deportable alien under INA § 237(a)(1)(C)(i), and the Immigration Judge's own order identifies the governing authority as "INA section 236(a)." (Ex. 5 at 3; Ex. 2, Order at 1–2.) Her detention is discretionary under 8 U.S.C. § 1226(a). See *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026).*

10. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). And the bond hearing Ms. Lin later received did not cure the violation, because it could not. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing," and "the appropriate remedy for the deprivation is release from custody." *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4 (C.D. Cal. May 20, 2026); *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."* E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).*

11. Petitioner does not ask this Court to order another bond hearing, and does not consent to one in lieu of release. She asks this Court to issue the writ and order her immediate release on reasonable conditions of supervision, and to bar Respondents from re-detaining her absent notice and a constitutionally adequate pre-deprivation hearing before a neutral adjudicator.

## II. JURISDICTION

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(1), (c)(3).

13. Federal courts retain jurisdiction under § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). "[T]he writ of habeas corpus remains

available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal — none exists. The Executive Office for Immigration Review's own Automated Case Information system, queried on August 27, 2026, reports that "This case is pending," that "No appeal was received for this case," and that Petitioner's next master hearing before Immigration Judge Marcus is set for September 11, 2026 at 8:00 a.m. (Ex. 1.) The jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not bar this action. See *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

14. Title 8 U.S.C. § 1226(e) does not withdraw jurisdiction over the claims pleaded here. Section 1226(e) removes review of the Attorney General's discretionary judgment regarding detention or release; it "does not preclude challenges [to] the statutory framework that permits [the alien's] detention without bail." *Jennings*, 583 U.S. at 295 (quoting *Demore*, 538 U.S. at 517). Petitioner does not ask this Court to reweigh discretion. She challenges the procedures: the absence of any pre-deprivation process, the absence of any individualized assessment, the failure to place the burden on the Government, the failure to consider ability to pay or alternatives to detention, and the absence of a neutral adjudicator.

15. The Ninth Circuit has resolved the point. *Martinez v. Clark* holds that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law," and that whether a noncitizen is a flight risk or a danger "is a mixed question of law and fact and is reviewable as a 'question of law.'" 124 F.4th 775, 779, 781–82 (9th Cir. 2024); accord *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057–58 (9th Cir. 2008).

16. The Court is directed to grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## III. VENUE

17. Venue is proper in this district. A habeas petition challenging present physical confinement must be filed in the district of confinement and name the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, which lies within the Central District of California. 28 U.S.C. §§ 84(c), 2241(a).

**IV. PARTIES**

18. Petitioner Liping Lin is a native and citizen of the People's Republic of China, born January 16, 1995. She is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, CA 92301, under A# 216-334-824. (Ex. 5 at 1.)

19. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian, with day-to-day control over the facility where she is confined. *Padilla*, 542 U.S. at 435.

20. Respondent Jaime Rios is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, and is the ICE official with authority over Petitioner's detention and custody determinations. He is sued in his official capacity.

21. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

22. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the immigration laws. See 8 U.S.C. § 1103(a).

23. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

**V. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

24. No statutory exhaustion requirement applies to a § 2241 petition challenging the constitutionality of immigration detention, and judicially created exhaustion is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be

excused where administrative remedies are inadequate or not efficacious, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

25. Each ground applies. The constitutional injury Petitioner alleges — deprivation of liberty without pre-deprivation process — is one the immigration courts have no jurisdiction to adjudicate and no power to remedy. "[N]either the Immigration Judge nor this Board may rule on the constitutionality of the statutes that we administer." *In re Rodriguez-Carrillo*, 22 I. & N. Dec. 1031, 1035 (BIA 1999); see also *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) ("Constitutional claims are generally excepted from the exhaustion requirement."). Exhaustion is excused where "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

26. An appeal to the Board would also be futile and would compound the injury. The only relief the agency can offer is another custody redetermination — that is, more of the after-the-fact process that the case law holds insufficient to cure this injury. See *Zaitsev*, 2026 WL 1047942, at *7;* Zepeda Perez v. Santacruz*, 2026 WL 980492, at* 5 (C.D. Cal. Apr. 9, 2026). And as Exhibit 3 shows, the deficiency here is not one adjudicator's isolated error in one case; it is a pattern spanning at least eight respondents. Directing her back into the channel that produced the pattern is not a remedy; it is a delay. A Board appeal takes months she does not have; her notice of appeal is not even due until September 24, 2026, and EOIR's docket confirms that no appeal has yet been received. (Ex. 2, Order at 2; Ex. 1.) The Ninth Circuit excuses exhaustion where "requiring it would cause prejudice due to an unreasonable delay." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003). Ms. Lin has been detained since August 4, 2026. Every additional day is a separate irreparable injury that no later administrative decision can undo.

## VI. THE EVIDENCE SUBMITTED WITH THIS PETITION

27. Petitioner submits five exhibits. Every material factual allegation below is drawn from them, and the great majority is drawn from documents the Government itself created, issued, or filed.

Exhibit 1 — Executive Office for Immigration Review, Automated Case Information, *In re Lin, Liping*, A# 216-334-824, printed August 27, 2026: case pending, no BIA appeal received, next master hearing September 11, 2026 at 8:00 a.m. before Immigration Judge Steven Marcus.

Exhibit 2 — The custody record. It contains (i) the Order of the Immigration Judge denying custody redetermination, entered August 25, 2026 (Marcus, IJ), cited herein as "Ex. 2, Order"; and (ii) Respondent's Motion for Custody Redetermination, filed with the Adelanto Immigration Court on August 13, 2026 and admitted in the custody proceeding as Immigration Court Exhibit 1, cited herein as "Ex. 2, Mot." and paginated from its first page. The motion was filed with a 31-page evidentiary submission — a completed bond worksheet; Petitioner's passport, F-1 visa, USCIS biometrics notice, and Employment Authorization Document; her 2025 Form W-2; a sworn declaration and supplemental letter from her employer; that sponsor's United States passport, California driver's license, and 2025 federal tax return — which was admitted as Immigration Court Exhibit 2, is part of the immigration court record, and which Petitioner will lodge in full upon the Court's request.

Exhibit 3 — Compendium of bond denial orders issued by Immigration Judge Steven Marcus at the Adelanto Immigration Court, Tabs 3-A through 3-G, with an index summarizing each order's respondent, A-number, date, counsel of record, and stated reason for denial.

Exhibit 4 — Petitioner's USCIS Employment Authorization Document, Card No. IOE0919223109, category C08, USCIS No. 216-334-824, valid from March 11, 2024 through March 10, 2029, drawn from the evidentiary submission admitted as Immigration Court Exhibit 2.

Exhibit 5 — U.S. Department of Homeland Security Form I-213, Record of Deportable/Inadmissible Alien, with Form I-831 continuation pages, prepared August 4, 2026 by Deportation Officer Nevarez (D. 13882), uploaded by DHS to the Adelanto Immigration Court on August 24, 2026 and admitted in the custody proceeding as Immigration Court Exhibit 5. Cited to the form's own page numbers.

## VII. STATEMENT OF FACTS

### A. Ten Years of Open Residence, a Nine-Year Pending Asylum Application, Federal Work Authorization, and Six Years With the Same Employer.

28. Petitioner is a native and citizen of the People's Republic of China, born January 16, 1995. On July 24, 2016, she was inspected and admitted to the United States at Chicago, Illinois, as an F-1 nonimmigrant student, authorized to remain for the duration of her student status under SEVIS Form I-20. DHS's own Form I-213 so records: "On July 24, 2016, the United States Customs Border Protection admitted LIN into the United States at Chicago, Illinois from China as a F1 student for the duration of her student status as authorized by Student and Exchange Visitor Information System (SEVIS) form I-20." She did not enter without inspection. (Ex. 5 at 1, 3; Ex. 2, Mot. at 1.)

29. Shortly after her arrival, Petitioner developed a sincere religious faith. She was baptized a Roman Catholic on April 16, 2017. In June 2017 she filed a Form I-589 Application for Asylum and for Withholding of Removal with USCIS, grounded in her religious beliefs and her fear of persecution if returned to China. ICE's own Form I-213 records both the filing and the fear: "On June 20, 2017 LIN submitted immigration form I-589 Application for Asylum and for Withholding of Removal"; "LIN claims fear of returning to her home country"; and "LIN claims she has a pending Asylum application with United States Citizenship and Immigration Services." That application remains pending today — for more than nine years — and has never been denied, withdrawn, or found frivolous. (Ex. 5 at 3–4; Ex. 2, Mot. at 1.)

30. Petitioner does not contest, for purposes of this Petition, that she is removable as charged. The question this Petition raises is not whether she may be removed; it is whether the Constitution permitted Respondents to jail her without process while that question is litigated. What matters here is that for ten years she has lived openly, at addresses the Government has on file, under documents the Government itself issued to her.

31. Those documents are extensive. USCIS granted Petitioner employment authorization in category (c)(8); her Employment Authorization Document, Card No. IOE0919223109, is valid from March 11, 2024 through March 10, 2029. USCIS scheduled her for biometrics in connection with that application, and she complied. The Social Security Administration issued her a Social

Security number — DHS printed it, together with the account name "LI PING LIN," on the face of its own arrest form. The State of California issued her a REAL ID-compliant driver's license, which ICE likewise recorded on that form. (Ex. 4; Ex. 5 at 1, 4; Ex. 2, Mot. at 1.)

32. Petitioner has worked for the same employer group for more than six years. She began in January 2020 as a Sales Manager at Deluxe Medical Spa RH APC in Diamond Bar, California. In June 2025 she moved to Annie Deluxe LLC, where she serves as Store Manager. Her 2025 Form W-2 reports wages of $56,405.71 and Social Security wages of $57,686.02, with federal income tax, Social Security tax, and Medicare tax withheld throughout. Respondents' own Form I-213 corroborates the employment: it names her employer — "E MED SPA, DIAMOND BAR, CALIFORNIA, 91765" — lists her "Type of Employment" as "Sales Occupations" and her occupation as "SALES," and records that she was "Employed from/to 01/01/2022 [to] 08/04/2026," the day of her arrest. (Ex. 5 at 1, 2; Ex. 2, Mot. at 2.)

33. That entry deserves emphasis. On the arrest forms of other respondents this same office processed, the "Type of Employment" field reads "Unemployed or Retired." Here the Government affirmatively documented that Petitioner held a job, named the employer, and dated the employment through the day it took her into custody.

34. Her employer describes a role considerably larger than the title. Annie Deluxe operates 23 locations with approximately 360 employees; Petitioner manages its Diamond Bar location, where she provides leadership and oversight for a team of approximately 38 employees, working alongside nurse practitioners, physician assistants, registered nurses, and administrative staff. Her responsibilities span sales, marketing, and operations. Her absence, her employer states, has created a meaningful leadership and operational gap. (Decl. and letter of Cheryl Chen, filed with Ex. 2, Mot.)

35. Cheryl Chen — a United States citizen who founded Deluxe Management Group LLC and co-founded Annie Deluxe LLC, businesses generating approximately $7,000,000 in annual revenue — has known Petitioner for more than six years and submitted a declaration under penalty of perjury in support of her release. She attests that Petitioner consistently demonstrates professionalism, reliability, and a strong work ethic; that after years of working together she regards her not simply as an employee but as family; that if released Petitioner will immediately return to her position at the company; and that Ms. Chen is fully committed to providing her with any support

she needs, including assistance with housing, daily living expenses, and immigration counsel. (Ex. 2, Mot. at 2; Decl. of Cheryl Chen, filed with Ex. 2, Mot.)

36. Petitioner has a fixed address at 1045 Hedgepath Avenue, Hacienda Heights, California 91745. That is the address ICE recorded on the face of its own arrest form, and it is the address at which she would live if released. (Ex. 5 at 1; Ex. 2, Mot. at 2.)

37. Petitioner has no criminal history of any kind — not a conviction, not an arrest, not a charge — in the United States or anywhere else. ICE's own Form I-213 states, under the heading "CRIMINAL HISTORY," a single word: "None." The same form records her "Immigration Record" as "NEGATIVE," leaves the "Criminal Record" field blank, states that she "claims no gang affiliation," and reports that the TECS law-enforcement database check run on the day of her arrest returned a "Negative result." (Ex. 5 at 1, 2, 4; Ex. 2, Mot. at 2.) She had never been detained before August 4, 2026.

**B. Respondents Did Not Come for Petitioner. They Came for Someone Else, Encountered Her Beside That Person, and Jailed Her.**

38. On August 4, 2026, Petitioner traveled to Los Angeles International Airport with her coworkers to board United Airlines Flight 1224 to Honolulu, Hawaii, for a company team-building trip her employer had organized. Hawaii is a State of the United States. She was not leaving the country, and she was not entering it. (Ex. 5 at 3; Ex. 2, Mot. at 2.)

39. Respondents were at that airport for a different person. ICE's Form I-213 states, under the heading "LEAD DEVELOPMENT," that Petitioner "came to the attention of Enforcement and Removal Operations (ERO) Los Angeles pursuant to a collateral arrest from a Transportation Security Administration (TSA) lead referral regarding WANG, Huan (A#232934025)," and, under "ENCOUNTER DATA," that ERO Los Angeles Fugitive Operations arrested her "pursuant to an enforcement operation" in which "LIN was incidentally encountered during a targeted enforcement operation to locate and apprehend Huan WANG." The form's "Method of Location/Apprehension" field reads "CA." (Ex. 5 at 1, 2.)

40. The narrative confirms it. Officers "arrived at Los Angeles International Airport … at approximately 0800 hours, where WANG was scheduled to depart from Los Angeles, California to Honolulu, Hawaii via United Airlines flight UA1224." They "observed a female matching the

physical description and image of WANG near the departing gate, accompanied by two other individuals." Petitioner was one of the two. (Ex. 5 at 3.)

41. Respondents had made no determination about Ms. Lin before that moment. They had not investigated her, had not sought her, and had not concluded that she needed to be detained. They ran her only after she happened to be standing next to the person they wanted: "LIN was positively identified and ERO Officer conducted law enforcement record checks." (Ex. 5 at 3.) Her deprivation of liberty was, on the Government's own account, a byproduct of proximity.

42. The timeline forecloses any claim of exigency. Officers arrived at approximately 0800 hours and arrested Petitioner "[a]t approximately 1159 hours." (Ex. 5 at 3.) Nearly four hours elapsed. In that time Respondents conducted a field interview, ran records checks on a person they had not come to find, reviewed her immigration history, and decided to take her into custody. They had time to assemble a case for detaining Ms. Lin from nothing. They had the same time — and more — to present that case to a neutral decision-maker before jailing her. Providing notice and an opportunity to be heard was not merely practicable; Respondents used those hours to do everything except that.

43. Petitioner's conduct when approached is likewise recorded in Respondents' own document. "Officers approached the individuals, identified themselves as ICE/Immigration, and conducted a field interview. One subject identified herself as LIN; LIN presented a California Identification Card." She was arrested "without incident" and "transported to the Los Angeles Field Office for processing." (Ex. 5 at 3.) A person planning to abscond does not volunteer her true name to federal officers and hand them her government-issued identification.

44. The arrest was effected without a judicial warrant, without prior notice, and without a hearing. The Form I-213 records the disposition as "Warrant of Arrest/Notice to Appear" — a warrant ICE wrote for itself. No judge, no magistrate, and no Immigration Judge — no neutral decision-maker of any kind — reviewed the decision to deprive Petitioner of her liberty before it was taken. (Ex. 5 at 1.)

45. DHS served Petitioner with a Form I-862 Notice to Appear charging her as deportable under INA § 237(a)(1)(C)(i), "for failure to maintain or comply with conditions of the nonimmigrant status under which she was admitted." (Ex. 5 at 3.) That charge is an admission by

the Government that Petitioner was admitted: a charge under § 237 lies only against a noncitizen who has been admitted, while applicants for admission are charged under § 212. Petitioner is accordingly not an arriving alien and is not subject to the mandatory custody provisions of INA § 236(c). Her detention is discretionary under 8 U.S.C. § 1226(a) — as the Immigration Judge's own order confirms, identifying the governing authority as "INA section 236(a)." (Ex. 2, Order at 1–2; Ex. 2, Mot. at 2.)

46. Petitioner was transported to the Adelanto ICE Processing Center, where she has remained in continuous custody since August 4, 2026.

**C. Removal Proceedings and the August 25, 2026 Bond Denial.**

47. Petitioner is in removal proceedings before the Immigration Court at 10250 Rancho Road, Suite 201A, Adelanto, California. Her case is pending; no decision has issued on the merits, no appeal from any merits decision is on file, and no final order of removal exists. EOIR's Automated Case Information system so states as of August 27, 2026, and shows her next master hearing set for September 11, 2026 at 8:00 a.m., internet-based, before Immigration Judge Steven Marcus. (Ex. 1.) She intends to appear at that hearing and at every hearing, and to continue prosecuting her asylum claim.

48. On August 13, 2026, Petitioner, through immigration counsel Robert Charles Wolfe, filed a Motion for Custody Redetermination supported by a 31-page evidentiary submission: a completed bond worksheet; her passport, F-1 visa, USCIS biometrics notice, and Employment Authorization Document; her 2025 Form W-2; a sworn declaration and supplemental letter from her employer; that sponsor's United States passport, California driver's license, and 2025 federal tax return; and a certificate of service. The motion was admitted as Immigration Court Exhibit 1 and the submission as Immigration Court Exhibit 2. (Ex. 2, Mot.; Ex. 4.)

49. Petitioner asked for a bond of $1,500 and identified the Hacienda Heights residence where she would live if released. DHS had set no bond at all. (Ex. 2, Mot. at 2.)

50. On August 25, 2026, Immigration Judge Steven Marcus denied bond in its entirety. (Ex. 2, Order.) The order is a pre-printed checkbox form. Its entire substantive reasoning is one sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding."

51. Everything else on the order is language printed on the form itself — a recitation that "[t]he Court conducted an individualized bond and custody redetermination hearing in this matter," that it "considered all arguments and evidence presented from both sides," and that it "orally articulated its findings" into the Digital Audio Recording system. The order makes no factual findings. It cites no evidence. It does not identify what, if anything, DHS presented. It states no bond amount and never addresses the $1,500 Petitioner requested. It names no alternative to detention. It does not mention her ten years of residence, her nine-year pending asylum application, her employment authorization valid through 2029, her Social Security number, her six-year employment history, her management of a thirty-eight-person team, her W-2 wages, her United States citizen sponsor, her fixed address — or the fact that Respondents' own arrest report describes her detention as a collateral arrest of a person "incidentally encountered." (Ex. 2, Order at 1.)

52. Petitioner reserved appeal; DHS waived it. Her notice of appeal to the Board is not due until September 24, 2026, and a Board appeal would take months to decide. (Ex. 2, Order at 2.) EOIR's docket confirms that no appeal has been received. (Ex. 1.) She remains detained at Adelanto today.

**D. The Same Immigration Judge Issued the Same Sentence to Eight Different People — Twice on a Single Day.**

53. The clearest evidence that a decision was not individualized is that the identical decision issued to someone else. Petitioner need not argue the point; she attaches the orders. Exhibit 3 is a compendium of seven bond denial orders entered by Immigration Judge Steven Marcus at the Adelanto Immigration Court, each reproduced in full behind its own tab, with an index page summarizing them:

54. Tab 3-A: *In re Wei, Ying*, A# 236-066-350, August 21, 2026 (counsel Zhigeng Fu, Diamond Bar). Tab 3-B: *In re Tong, Li*, A# 213-615-073, June 12, 2026 (counsel Zhigeng Fu, Diamond Bar). Tab 3-C: *In re Zhou, Chunwei*, A# 235-522-191, July 24, 2026 (counsel Junmei Wu, Pasadena). Tab 3-D: *In re Tu, Qing*, A# 246-481-887, July 31, 2026 (counsel Jiawei Peng, San Jose). Tab 3-E: *In re Ma, Lingjun*, A# 242-409-224, August 11, 2026 (counsel Yunchao Song, City of Industry). Tab 3-F: *In re Munkhbat, Urtnasan*, A# 235-489-021, August 14, 2026 (counsel Jeannie Joung, Los Angeles). Tab 3-G: *In re Xiong, Shimei*, A# 242-302-943, August 21, 2026 (counsel Yue Alan Zhang, Monterey Park).

55. Six of those seven — Tabs 3-A and 3-C through 3-G, every order in the compendium entered on or after July 24, 2026 — are word-for-word identical in every respect that matters: the same one-sentence flight-risk finding, followed by the same pre-printed paragraphs reciting that the hearing was “individualized,” that all arguments and evidence were “considered,” and that findings were “orally articulated” into the DAR system. Not one identifies any evidence, makes a finding of fact, states a bond amount, or names an alternative to detention. Each is signed “MARCUS, STEVEN.”

56. Ms. Lin’s order, entered August 25, 2026, is the seventh in that sequence and is word-for-word identical to the other six. (Compare Ex. 2, Order with Ex. 3, Tabs 3-A, 3-C through 3-G.)

57. First, the same order issued to two unrelated people on the same day. On August 21, 2026, Ms. Wei and Ms. Xiong each received it — different respondents, different counsel, different records, the same twenty-three words, signed the same day. (Ex. 3, Tabs 3-A, 3-G.) An adjudicator who is actually weighing individual evidence does not produce the same sentence twice in one day.

58. Second, the identical orders run consecutively across five weeks: July 24, July 31, August 11, August 14, twice on August 21, and again on August 25 — every order counsel has been able to obtain from this judge in that window, and they are the same order.

59. Third, seven different attorneys of record appeared across those seven identical orders. Zhigeng Fu of Diamond Bar, Junmei Wu of Pasadena, Jiawei Peng of San Jose, Yunchao Song of City of Industry, Jeannie Joung of Los Angeles, and Yue Alan Zhang of Monterey Park each represented a different respondent on a different record; Robert Charles Wolfe of Houston, Texas represented Ms. Lin. Seven separate law offices, briefing seven separate records. Whatever any of them argued made no difference to the text of the ruling.

60. Fourth, the respondents’ records have almost nothing in common. They differ in nationality — the compendium includes a Mongolian national alongside Chinese nationals — and in immigration history, length of residence, family composition, and the evidence submitted. Ms. Lin is a 31-year-old store manager with a decade of residence, a nine-year pending asylum application, a federal work permit valid to 2029, and a United States citizen employer-sponsor, who was arrested

only because she was standing near someone else. Nothing in any of the seven orders distinguishes one respondent from another, because nothing in any of them describes a respondent at all.

61. Fifth, and most tellingly, the assurance of individualization is itself a template. Tab 3-B, entered June 12, 2026 by the same judge for a respondent represented by the same attorney who later appeared in Tab 3-A, contains no such recitation. It denies bond in a single, differently worded line — "Flight risk for which no amount of bond and alternatives for detention is sufficient to mitigate" — with no claim that an individualized hearing occurred, no reference to the DAR, and no reference to 8 C.F.R. § 1003.19(f). The "individualized … hearing" paragraph appears in none of this judge's orders in the compendium before July 24, 2026 and in every one after, in identical form. A sentence that materializes on a form and thereafter recurs verbatim is not a finding by an adjudicator. It is boilerplate, and this Court need not accept it as anything else.

62. Sixth, this Court has seen one of these orders before. The order at Tab 3-D was filed as an exhibit in another habeas petition in this District. See *Tu v. Warden*, No. 5:26-cv-04343, Dkt. No. 7-2 (C.D. Cal. filed Aug. 10, 2026). The practice documented here is not confined to Ms. Lin's case, and it is not new to this Court.

63. Not similar reasoning. Identical text, across records with nothing in common. That a pre-printed form recites the word "individualized" does not make a hearing individualized.

## VIII. LEGAL ARGUMENT

### A. Petitioner Holds a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before Respondents Seized Her.

64. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). That protection runs to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; accord *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Demore*, 538 U.S. at 523. The Clause protects Petitioner whether or not she is ultimately removable; removability is the question her immigration case will answer, and it is not a license to jail her without process in the meantime.

65. The Government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Because Petitioner is a § 1226(a) detainee and not subject to mandatory detention, no statute compelled her seizure. Respondents' decision to take her into custody was a pure exercise of executive discretion over a person who had lived openly in this country for ten years and was working under a federal work permit — and is therefore subject to the full requirements of the Due Process Clause, including its requirement of pre-deprivation process.

66. A noncitizen living at liberty in the United States has a due-process interest in "an opportunity or a hearing *before* [s]he is deprived of any significant protected interest." *R.A.N.O. v. Wofford*, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original); see also* E-M v. Hermosillo*, 2026 WL 883776, at* 6 (D. Or. Mar. 31, 2026); *Singh v. Noem*, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026). The rule that process must precede deprivation is the constitutional default.* Logan*, 455 U.S. at 436. Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."* United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted). This case is the antithesis of an extraordinary situation. Respondents were not pursuing Ms. Lin at all; they encountered her incidentally, spent nearly four hours deciding what to do about her, and then jailed her without asking anyone.*

67. Nor did any ICE administrative warrant supply the missing process. The Form I-213 records the disposition as "Warrant of Arrest/Notice to Appear" — a warrant ICE wrote for itself, after the fact, about a person it had not set out to find. (Ex. 5 at 1.) "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001). A warrant the enforcing agency writes for itself is the opposite of neutral review. See *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011).

**B. Every Mathews Factor Confirms That Pre-Deprivation Process Was Required.**

68. What process is due is determined by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected; the risk of erroneous deprivation and the value of additional safeguards; and the Government's interest. See generally *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Each factor favors Petitioner.

69. First, the private interest is at its maximum. Petitioner's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Liberty permits her to live at the home she has kept for years, to hold the job she has held since 2020, to prosecute the asylum claim that has been pending since 2017, and to "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Ten years of building a life in this country is precisely the interest the Clause protects.

70. Second, the risk of erroneous deprivation is not theoretical here; it is demonstrated. Pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of liberty. *Singh v. Noem*, 2026 WL 766228, at *9. Consider what a hearing would have surfaced that an airport records check did not: a work permit valid to 2029, a Social Security number, a REAL ID license, a W-2, six years with one employer, a thirty-eight-person team, a citizen sponsor, and a fixed address. Respondents' decision to detain rested on a database query run in a terminal on a person they had not come to find. That is exactly the circumstance in which a neutral decision-maker adds the most and costs the least.*

71. Third, the Government's interest in seizing Petitioner without any prior process is low. Civil immigration detention is not punitive; the only legitimate interests are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. Respondents' own record documents no criminal history, no gang affiliation, a "NEGATIVE" immigration record, and a negative TECS result. (Ex. 5 at 1, 2, 4.) And their own conduct answers the question: an agency that did not consider a person worth seeking out, and then waited nearly four hours to arrest her once she happened to appear, is not an agency responding to danger or imminent flight. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507, at *7 (quoting* Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). The burden of providing notice and a hearing is minimal — the Government runs custody hearings every day — while "[t]he costs to the public of immigration detention are 'staggering.'"* Hernandez*, 872 F.3d at 996. This is not the "special instance … where post-deprivation process is all that is due."* Zinermon v. Burch*, 494 U.S. 113, 139 (1990).*

**C. The After-the-Fact Bond Hearing Did Not and Could Not Cure the Violation, and This Court Should Not Order Another One.**

72. Respondents will answer that Petitioner already received a bond hearing. That is no answer. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at *7; accord* Zepeda Perez*, 2026 WL 980492, at* 5 ("Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process."); *E.G.M. v. Scott*, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies … do not cure the constitutional violation"). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."* E.A.T.-B.*, 795 F. Supp. 3d at 1324.*

73. The Central District has confronted this precise argument and rejected it on facts stronger for the Government than these. In *Mikayelyan*, the petitioner had already received a post-deprivation bond hearing at which the Immigration Judge denied bond — and the court nonetheless granted the writ and ordered release, holding that "the appropriate remedy for the deprivation is release from custody." No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4; accord *Singh v. Noem*, 2026 WL 766228, at *10 (immediate release warranted even though a post-deprivation bond hearing had been provided, because it failed to cure the injury of the unlawful detention itself).*

74. The reason is structural: the injury is the detention. Even if Petitioner were given a flawless hearing tomorrow and released, she "will have already suffered the harm … [of her] potentially erroneous detention." *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025). Ordering a do-over hearing would ratify the very sequence the Constitution forbids — seize first, justify later — and would leave Respondents free to repeat it tomorrow against the next work-authorized asylum applicant who happens to be standing beside an enforcement target. Petitioner therefore does not seek, and does not consent to, an order directing a further bond hearing in lieu of release.*

75. The record here supplies an additional, concrete reason not to send Ms. Lin back for more process: this Court can now see exactly what that process produces. Over five weeks it produced the same twenty-three words seven times, twice on a single day. Ordering another hearing before the same court would order an eighth copy — and the same judge is scheduled to hear her again on September 11, 2026. (Ex. 1.)

**D. Independently, the Hearing Petitioner Received Was Not Individualized and Did Not Satisfy Due Process.**

76. The Fifth Amendment requires that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). That relation cannot be assessed in the abstract; it requires an assessment of this person's circumstances. Civil detention is an "extraordinary" deprivation of liberty, *United States v. Salerno*, 481 U.S. 739, 750 (1987), and "[a]ny detention incidental to removal must bear[] a reasonable relation to its purpose," *Hernandez*, 872 F.3d at 990.

**1. Two identical orders in one day are not two individualized findings.**

77. As set out above and documented in Exhibit 3, the same Immigration Judge issued the same one-sentence flight-risk finding — verbatim — to six respondents across five weeks, twice on a single day, and then issued it a seventh time to Ms. Lin. The recitation that each hearing was "individualized" is itself pre-printed language that appears in none of this judge's orders in the compendium before July 24, 2026 and in every one after.

78. The Ninth Circuit has told courts what to do with this. A reviewing court takes the agency at its word only "in the absence of any red flags"; "when there is an indication that something is amiss," it should not credit the agency's "use of a 'catchall phrase' to the contrary." *Martinez*, 124 F.4th at 785. Here the catchall is not even a phrase the judge chose; it is a paragraph pre-printed on the form. A generalized assurance that everything was considered cannot substitute for engagement with probative evidence the decision never acknowledges. *Id.* A verbatim match across six unrelated records — two of them same-day — is not merely a red flag; it is proof that no such engagement occurred.

79. This case adds something the others did not have. The single most probative fact about how Ms. Lin came into custody — that Respondents' own arrest report calls it a collateral arrest of a person "incidentally encountered" while they looked for someone else — is not mentioned, distinguished, or acknowledged anywhere in the order. That document was not buried: DHS filed it with the Immigration Court the day before the hearing and it was admitted as the Government's own Exhibit 5. (Ex. 5.) An adjudicator engaging with this record would have had to

reckon with the fact that the Government itself had not thought Ms. Lin worth seeking out. This one issued the same twenty-three words he had issued six times before.

80. District courts have granted relief on weaker showings. In *Sales v. Johnson*, the court granted habeas where "the IJ's flight risk finding was not supported by clear and convincing evidence when the government did not present any evidence or even argue the flight risk factor." 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2018). The record here reflects the same absence: no DHS evidence is identified, because none is cited, because the form provides no place to cite any.

81. Should Respondents answer that the reasons were "orally articulated" into the DAR system, that answer proves the problem rather than solving it. If the articulation was individualized, Respondents can produce it: the order itself states that all DAR recordings "are readily available to both sides" through ECAS. (Ex. 2, Order at 1.) Petitioner respectfully requests that the Court order Respondents to lodge the recording and any transcript of the August 25, 2026 hearing in her case. Absent that, the only articulation before this Court is a sentence the same judge gave to six other people.

**2. The Government was not required to bear — and did not bear — the burden of proof.**

82. Under 8 C.F.R. § 1236.1(c)(8), the default rule places the burden on the noncitizen. But 8 U.S.C. § 1226(a) is silent on who must carry what burden, and this Court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The allocation is therefore a constitutional question governed by *Mathews*, and all three factors favor placing the burden on the Government by clear and convincing evidence.

83. The private interest is "one of the most elemental of liberty interests," *Hamdi*, 542 U.S. at 529; accord *Addington v. Texas*, 441 U.S. 418, 425 (1979). The risk of erroneous deprivation is acute: detained noncitizens cannot readily gather evidence or reach witnesses, *Diouf*, 634 F.3d at 1091–92, and they must prove a negative — that they will not flee — which is "never easy as a matter of proof," *Elkins v. United States*, 364 U.S. 206, 218 (1960). Ms. Lin nevertheless assembled, from inside Adelanto and in roughly a week, a 31-page evidentiary record including her federal work permit, her W-2, and a sworn sponsor declaration. The order mentions none of it. And the Government "has no legitimate interest in detaining individuals who have been determined not to be

a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 993. The Ninth Circuit has required clear and convincing proof from the Government in analogous contexts. *Singh v. Holder*, 638 F.3d at 1203–04; see *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996). Nothing in the August 25 order indicates that the Government bore any burden at all, or produced any evidence at all.

**3. The order rejects a bond amount it never identifies, ignores a $1,500 request, and never addresses ability to pay or a single alternative to detention.**

84. Due process requires an Immigration Judge to consider a detainee's financial circumstances and the availability of alternative conditions of release before setting or denying bond. *Hernandez*, 872 F.3d at 993–94. "When the [G]overnment determines what bond to set without considering a detainee's financial circumstances, or the availability of alternative conditions of release, there is a significant risk that the individual will be needlessly deprived of the fundamental right to liberty." *Id.* at 993.

85. This case presents that defect in its starkest form. Petitioner asked for a bond of $1,500 — a figure she selected, documented her ability to meet with a W-2 showing $56,405.71 in wages, and backed with a United States citizen sponsor who swore under penalty of perjury to assist with housing, daily living expenses, and immigration counsel. The order does not grant it, does not deny it by amount, and does not mention it. It announces instead that "no amount of bond" would suffice — a conclusion about every conceivable figure, reached without naming one. A court cannot find that no sum would secure a person's appearance without ever confronting the sum she actually offered. (Ex. 2, Order at 1; Ex. 2, Mot. at 2.)

86. The treatment of alternatives to detention is the same defect in the same sentence. The order does not omit alternatives; it announces a conclusion about them — that no bond would suffice "even if coupled with alternatives to detention" — while identifying not one alternative and explaining nothing about why any would fail. A conclusion recited is not an analysis performed. The order never mentions electronic monitoring, reporting requirements, ICE's Alternatives to Detention program, release to the Hacienda Heights address Petitioner identified — an address DHS itself printed on its arrest form — or supervision by the sponsor who committed in writing to

support her. Denying bond outright without considering financial circumstances or alternatives is independently unconstitutional. *Hernandez*, 872 F.3d at 993–94.

**4. The flight-risk finding is inverted by the governing factors and is entitled to no deference.**

87. Federal habeas courts do not defer to a bond determination that rests on no individualized findings and no clear and convincing evidence. *Sales*, 323 F. Supp. 3d at 1141; *Martinez*, 124 F.4th at 785. The Board's flight-risk factors include fixed address, length of residence, family ties, employment history, manner of entry, record of compliance with immigration obligations, and criminal record. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); see *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). The documented record before the Immigration Judge favored release on every factor it touched — and much of that documentation came from the Government's own form.

88. Fixed address. A residence at 1045 Hedgepath Avenue, Hacienda Heights, California — the address ICE itself printed on her arrest form, and the address at which she would live if released. Length of residence. Ten years, openly, under documents the Government issued her. Employment history. More than six years with one employer group, a management role over roughly thirty-eight people, a Form W-2 reporting $56,405.71 in wages, and a USCIS work permit valid through March 10, 2029 — with DHS's own Form I-213 naming her employer, classifying her employment as "Sales Occupations," and dating it from January 1, 2022 through the day of her arrest. Community ties. A United States citizen employer-sponsor of more than six years' acquaintance who regards her as family, has a job waiting for her, and has sworn to house and support her. Manner of entry. Inspected and lawfully admitted on a valid F-1 student visa at Chicago, as DHS's own form records. Compliance. A Form I-589 pending since June 2017, prosecuted continuously, with a USCIS biometrics appointment kept and no failure to appear before any court or agency, ever. Criminal record. None, in DHS's own word. (Ex. 4; Ex. 5 at 1, 2, 3–4; Ex. 2, Mot. at 1–2.)

89. Then there is what happened at the gate. Ms. Lin was standing in a secured federal facility, about to fly to Hawaii with her colleagues, when officers who had come for someone else asked who she was. She told them, and handed them her California identification card. The Government has never explained how a person who volunteers her identity to ICE officers, holds a federal work permit valid for three more years, manages thirty-eight employees, pays taxes on a W-

2, and lives at an address ICE has on file presents a risk of flight that no bond and no condition of supervision could contain. On this record, that finding — the most extreme finding available on the bond spectrum — is not merely unsupported. It is inverted.

**E. The Only Adequate Remedy Is Immediate Release.**

90. "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Where the Government has detained a person without the pre-deprivation process the Constitution requires, "the appropriate remedy for the deprivation is release from custody." *Mikayelyan*, Dkt. No. 19, at 4. Courts in this District have ordered release on comparable facts, recognizing that the deprivation of physical liberty is itself irreparable harm. See, e.g., *Jin Liu v. Noem*, No. 5:26-cv-00325-CAS-DTB (C.D. Cal. Jan. 30, 2026); *Tur-Sarksyan v. Bondi*, No. EDCV 26-00696-MWF (C.D. Cal. Feb. 23, 2026).

91. An order directing yet another custody redetermination would not restore what was taken and would not prevent its repetition. The remedy that matches the injury is the writ.

## IX. CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Procedural Due Process — Detention Without Pre-Deprivation Notice and Hearing

### (U.S. Const. amend. V)

92. Petitioner re-alleges and incorporates by reference each preceding paragraph.

93. Petitioner held a constitutionally protected liberty interest in remaining free from physical confinement. Respondents deprived her of that interest on August 4, 2026 without notice, without a hearing, and without review by any neutral decision-maker.

94. No exigency, emergency, or impracticability excused pre-deprivation process. Respondents were at the airport to apprehend a different person; by their own account Petitioner was "incidentally encountered" and taken in a "collateral arrest." They then spent nearly four hours — from approximately 0800 to approximately 1159 — interviewing her, running records checks, and deciding to detain her. Notice and a hearing before any arrest were entirely practicable. The violation was complete upon her detention and was not cured by the later bond hearing. The Court should grant the writ and order Petitioner's immediate release.

**COUNT TWO**

**Violation of Procedural Due Process — A Non-Individualized Bond Determination**

**(U.S. Const. amend. V)**

95. Petitioner re-alleges and incorporates by reference each preceding paragraph.

96. Assuming arguendo that a post-deprivation custody hearing could cure the violation alleged in Count One, the hearing Petitioner received was not constitutionally adequate. The August 25, 2026 order makes no factual findings, identifies no evidence, states no bond amount, never addresses the $1,500 bond Petitioner requested or her ability to pay it, and names no alternative to detention. Its operative sentence is identical, word for word, to orders the same Immigration Judge issued to six unrelated respondents represented by six other attorneys — two of them signed on a single day — and its recitation that the hearing was "individualized" is pre-printed boilerplate that appears in none of that judge's orders in the compendium before July 24, 2026.

97. Petitioner was further denied due process because the Government was not required to bear, and did not bear, the burden of justifying her continued detention by clear and convincing evidence, and because the adjudicator did not function as a neutral decision-maker as to her individual circumstances. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955); accord *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The inquiry is objective. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009). The Court should grant the writ and order Petitioner's immediate release rather than order a further hearing.

**COUNT THREE**

**Violation of Substantive Due Process — Detention Untethered to Any Permissible Purpose**

**(U.S. Const. amend. V)**

98. Petitioner re-alleges and incorporates by reference each preceding paragraph.

99. Civil immigration detention may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings. *Zadvydas*, 533 U.S. at 690. It may not be punitive.

100. Petitioner has no criminal history — DHS's own arrest record says so, in one word — and has been found by no adjudicator, on any evidence, to be dangerous. She entered lawfully, has lived here ten years, holds federal employment authorization through March 2029, has worked for one employer group for more than six years in a job DHS's own form documents, pays taxes on a Form W-2, maintains a fixed address ICE itself recorded, has a United States citizen sponsor prepared to house and support her, has never missed an immigration appointment, and has an asylum application she has prosecuted since 2017. She was taken into custody only because she was standing beside someone the Government had come to find. Her detention is not reasonably related to any legitimate purpose and violates substantive due process. The Court should grant the writ, order her immediate release, and enjoin Respondents from re-detaining her absent constitutionally adequate pre-deprivation process.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner Liping Lin respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's detention — effected on August 4, 2026 without notice and without a hearing before a neutral adjudicator prior to the deprivation of her liberty — is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that the August 25, 2026 post-deprivation bond hearing did not and cannot cure that violation, and that it independently failed to satisfy due process because it was not individualized, did not place the burden on the Government, and did not consider ability to pay or alternatives to detention;

(4) Issue a Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody IMMEDIATELY, on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any new restraint — including electronic monitoring — absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary;

(5) Order Respondents to lodge with this Court the Digital Audio Recording, and any transcript, of the August 25, 2026 bond hearing in *In re Lin, Liping*, A# 216-334-824;

(6) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(7) Enjoin Respondents from re-detaining Petitioner absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention;

(8) Enjoin Respondents from transferring Petitioner outside the Central District of California pending resolution of this Petition;

(9) Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(10) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 27, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.

Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am Petitioner's attorney. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on August 27, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.

Attorney for Petitioner