**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| LIPING LIN,<br><br>Petitioner,<br><br>v.<br><br>JAMES JANECHA, et al.,<br><br>Respondents. | Case No. 5:26-cv-04918-DFM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Petitioner Liping Lin filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging her civil immigration detention. See Dkt. 1 ("Petition"). Respondents answered. See Dkt. 7 ("Answer"). Petitioner replied. See Dkt. 8. For the reasons set forth below, the Petition is **GRANTED** in part.

## II. BACKGROUND

Petitioner is a thirty-one-year-old native and citizen of the People's Republic of China. See Petition ¶ 1. Petitioner was inspected and admitted into the United States on an F-1 student visa on July 24, 2016, authorized to remain for the duration of her student status. See id. ¶¶ 1, 28. Petitioner's Form I-213 indicates that on September 12, 2016, Petitioner's authorization was terminated for failure to enroll. See id., Ex. 5 (Form I-213) at 4. On April 16, 2017, Petitioner was baptized a Roman Catholic. See id. ¶¶ 1, 29. On June 20,

2017, Petitioner filed an application for asylum based on her religious faith and fear of persecution in China. See id.; Form I-213 at 4. Petitioner's application remains pending. See Petition ¶¶ 1, 29.

United States Citizenship and Immigration Services ("USCIS") issued Petitioner employment authorization valid from March 11, 2024 through March 10, 2029. See id. ¶¶ 1, 31; id., Ex. 4. Petitioner has worked for the same employer group since January 2020; she currently manages its Diamond Bar location and a staff of roughly thirty-eight people. See id. ¶¶ 1, 32-34. Petitioner has paid taxes, has a fixed address in Hacienda Heights, California, and has no criminal history of any kind. See id. ¶¶ 1, 36-37.

On August 4, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner at Los Angeles International Airport. See id. ¶¶ 2, 38-46. Petitioner was at a departing gate with her coworkers, about to board a domestic flight to Hawaii on a team-building trip her employer had organized. See id. ¶¶ 2, 38. ICE was not looking for Petitioner; she "came to the attention of Enforcement and Removal Operations (ERO) Los Angeles pursuant to a collateral arrest from a Transportation Security Administration (TSA) lead referral regarding [another individual]," and "was incidentally encountered during a targeted enforcement operation to locate and apprehend [the other individual]." Id. ¶¶ 2, 39-40; Form I-213 at 3-4. Petitioner was standing next to the person ICE sought, who was the subject of a targeted enforcement operation. See id. ¶¶ 3, 40-41.

The Form I-213 indicates that ICE officers approached Petitioner and identified themselves. See Form I-213 at 4. Petitioner presented her California Identification Card and a law enforcement record check revealed that she was not permitted to remain in the United States as an F1 student. See id. According to the Form I-213, Petitioner was not in possession of documents authorizing her presence in the United States. See id. Petitioner was arrested

"without incident" and transported to the Los Angeles Field Office for processing. See id. Petitioner was given no prior notice, hearing, or review by any neutral decision-maker before her liberty was taken. See Petition ¶¶ 2, 44. The Department of Homeland Security ("DHS") served Petitioner with a Form I-862 Notice to Appear charging her as deportable under INA section 237(a)(1)(C)(i). See id. ¶ 45.

Petitioner remains detained at the Adelanto ICE Processing Center. See https://locator.ice.gov/odls/#/search (search A-Number: "216334824," Country of Birth: "China, Peoples Republic of") (last accessed September 11, 2026). Available information indicates that Petitioner is scheduled for an individual hearing before an IJ on November 6, 2026. See https://acis.eoir.justice.gov/en/ (search A-Number: "216334824," Nationality: "China") (last accessed September 11, 2026).

On August 13, 2026, Petitioner, through immigration counsel, filed a Motion for Custody Redetermination supported by a 31-page evidentiary submission: a completed bond worksheet; her passport, F-1 visa, USCIS biometrics notice, employment authorization, and 2025 Form W-2; a sworn declaration and supplemental letter from her employer, that sponsor's United States passport, California driver's license, and 2025 federal tax return; and a certificate of service. See Petition ¶ 48; id., Ex. 2. On August 25, 2026, the Immigration Judge ("IJ") denied Petitioner's request, stating: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." See id. ¶ 50; id., Ex. 2 (Bond Denial). Petitioner reserved appeal; her appeal is due to the Board of Immigration Appeals ("BIA") September 24, 2026. See Bond Denial at 3.

Petitioner asserts three claims, all alleging violations of the Fifth Amendment Due Process Clause: (1) detention without pre-deprivation notice and a hearing in violation of procedural due process (Count One); (2) a non-

individualized bond determination in violation of procedural due process (Count Two); and (3) detention untethered to any permissible purpose in violation of substantive due process (Count Three). See Petition ¶¶ 92-100. Petitioner seeks declaratory relief; immediate release on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any new restraint absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary; injunctive relief regarding her re-detention; and reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. See id. at 26-27 (Prayer). Petitioner expressly "does not ask this Court to order another bond hearing, and does not consent to one in lieu of release." Id. ¶ 11.

Respondents contend that individuals who overstay nonimmigrant visas do not have a conditional liberty interest protected by the Due Process Clause. See Answer at 2-4. Respondents contend that to the extent Petitioner seeks to overturn the IJ's bond denial, Petitioner has not exhausted her administrative remedies. See id. at 4-6. Respondents request the Court deny the Petition. See id. at 6.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)

### A. Exhaustion Bars Count Two, Not Count One

Respondents argue that "to the extent [Petitioner] seeks to overturn [the IJ's] decision [to deny bond], she has not exhausted her administrative remedies." Answer at 4-6.

A noncitizen habeas petitioner ordinarily "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted). In determining whether exhaustion is required for a constitutional question, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995). When a petitioner does not exhaust, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo, 646 F.3d at 1160.

Generally, prudential exhaustion may be required when the following factors are met: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Courts may nonetheless waive exhaustion if the petitioner demonstrates that "administrative remedies are inadequate or not efficacious," "pursuit of administrative remedies would be a futile gesture," "irreparable injury would result," or "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, the prudential exhaustion requirement warrants dismissal without prejudice of Count Two, wherein Petitioner challenges the constitutional adequacy of her bond hearing. See Petition ¶¶ 95-97. Agency expertise and the availability of the administrative record favor requiring exhaustion as to this claim. On appeal, the BIA may review the IJ's legal, discretionary, and

judgment determinations de novo, may review findings of fact for clear error, and may remand if further factfinding is needed. See 8 C.F.R. § 1003.1(d)(3)(i)-(ii). Excusing exhaustion where Petitioner's appeal deadline has not yet expired would encourage bypass of the administrative scheme. Additionally, administrative review could eliminate the need for judicial review of this claim. If the BIA concludes that the hearing was deficient, it may sustain the appeal or remand for a new bond hearing.

Nor has Petitioner demonstrated grounds for excusing exhaustion as to Count Two. The BIA has authority to review the custody determination, see 8 C.F.R. §§ 1003.1(b)(7), 1236.1(d)(3)(i), and Petitioner identifies no policy, practice, or decision suggesting that the outcome of her appeal is preordained. Nor are the administrative remedies inadequate merely because the claims are framed in constitutional terms. See Leonardo, 646 F.3d at 1160; Liu, 55 F.3d at 426; see also Sola v. Holder, 720 F.3d 1134, 1135-36 (9th Cir. 2013) (stating the constitutional exception to the exhaustion requirement, but clarifying that "[n]ot all due process claims fall within this exhaustion exception."). Count Two alleges defects in the conduct of the bond hearing which are reviewable by the BIA.

Petitioner invokes Martinez v. Clark, 124 F.4th 775 (9th Cir. 2024), see Reply at 12-13, but Martinez does not concern exhaustion. Just because a question of law or mixed question of law and fact remains within a habeas court's jurisdiction to review notwithstanding 8 U.S.C. § 1226(e), that does not mean the question is properly reviewed in advance of a petitioner's exhaustion of administrative remedies.

Nor has Petitioner shown grounds for excusing exhaustion on account of irreparable injury. If detention was sufficient to excuse exhaustion, every immigration habeas petitioner in detention would be able to demonstrate exhaustion, rendering Leonardo and the prudential exhaustion scheme

essentially meaningless. Thus, the Court will dismiss Count Two without prejudice for failure to exhaust.

However, the Court declines to dismiss Count One on exhaustion grounds. Even if the Court assumes that the Puga factors support requiring exhaustion as to Count One, the Court would waive exhaustion on futility grounds. In Count One, Petitioner claims that the original constitutional transgression occurred when ICE detained her without notice or a pre-deprivation hearing. A post-deprivation bond hearing would not address the propriety of Petitioner's claim that she was not afforded constitutionally adequate procedural safeguards pre-deprivation. See Zhao v. Janecha, No. 26-5025, 2026 WL 2666865, at *3 (C.D. Cal. Sept. 9, 2026) ("The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals."); Yu v. Giles, No. 26-4692, 2026 WL 2455945, at *3 (C.D. Cal. Aug. 21, 2026) (same); R.N.G. v. Semaia, --- F. Supp. 3d. ---, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026) (same).

**B. The *Mathews* Factors Weigh in Petitioner's Favor**

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

Petitioner alleges that she holds a protected liberty interest in freedom from imprisonment, no statute compelled her seizure, pre-deprivation safeguards would greatly reduce the risk of an erroneous deprivation of her liberty, and the Government's interest in seizing her without any prior process is low. See Petition ¶¶ 64-71. On this record and as explained below, the Court

concludes that Petitioner's detention effected on August 4, 2026 without pre-deprivation notice and a hearing violates the Fifth Amendment Due Process Clause.[1]

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have consistently held that this principle extends to noncitizens released by DHS pending removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." (citations omitted)); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citation omitted)); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that [p]etitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process.").

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures

[1] Given the Court's disposition on Count One, the Court declines to reach Count Three.

used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

In the context of § 1226(a) detention, this Court has regularly applied the Mathews factors and granted—or, in non-consent cases, recommended that the District Judge grant—a habeas petition and ordered the petitioner released where the petitioner was previously apprehended by immigration authorities, released on an order of release on recognizance, and re-detained without adequate process. See, e.g., Chiquito Subero v. Johnson, No. 26-2163, 2026 WL 1288645 (C.D. Cal. May 7, 2026). In such cases, the Court has discussed the liberty interest identified in Morrissey.

Based on the record before the Court, Petitioner's circumstances are similar. The record before the Court indicates that Petitioner was admitted to the United States on a student visa in 2016, applied for asylum the next year, remained in the United States for nine years thereafter, and was taken into immigration custody for the first time in August 2026. The record indicates that USCIS issued Petitioner employment authorization on or about March 11, 2024, valid through March 10, 2029, including at the time of her detention. The record indicates that Petitioner resided in the United States for over nine years after applying for asylum and a decade following the expiration of her authorization, based on the September 2016 termination date set forth in the Form I-213. The record indicates that USCIS issued Petitioner's employment authorization over eight years after the expiration of her authorization, likewise based on the termination date set forth in the Form I-213.

Under these circumstances, Petitioner appears similarly situated to cases in which other district courts have recognized that noncitizen asylum applicants have a liberty interest that requires a hearing before any re-detention. See, e.g., Yao v. Janecka, No. 26-04735, 2026 WL 2666861, at *4 (C.D. Cal. Sept. 10, 2026) ("Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief." (collecting cases)); Yu, 2026 WL 2455945, at *4; Kharitonova v. Albarran, No. 26-1362, 2026 WL 531441, at *2-3 (N.D. Cal. Feb. 25, 2026) (requiring a hearing before any re-detention where a noncitizen entered on a nonimmigrant visa, applied for asylum within one year, and lived in the United States for over a decade before being detained), appeal filed, No. 26-2554, (9th Cir. Apr. 24, 2026); Gagik T. v. Chestnut, No. 26-4337, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) (finding that "a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process").

The Court finds that Petitioner has a liberty interest in freedom from physical confinement. "By concluding that there was no need to detain Petitioner after [her] [nonimmigrant] visa had expired, and instead sanctioning [her] continued presence in the United States by granting . . . [her] employment authorization, the government vested in Petitioner a liberty interest in [her] continued freedom." Gagik T., 2026 WL 1837413, at *3. Accordingly, the Court turns to the Mathews framework to address the sufficiency of the procedures attending the deprivation of Petitioner's liberty interest.

Starting with the first Mathews factor, Petitioner's private interest in freedom from detention is substantial. However, Ninth Circuit precedent requires the Court to also consider "the process [Petitioner] received during this time" and "the further process that was available to [her]." Rodriguez Diaz, 53 F.4th at 1208. It is undisputed that Petitioner did not receive a pre-deprivation hearing. However, Petitioner has since received a post-deprivation custody redetermination hearing before an IJ, albeit one she staunchly contends was constitutionally inadequate. On this record, the first Mathews factor weighs in Petitioner's favor, but the Court will not "overstate the strength of [Petitioner's] showing" where she received a post-deprivation bond hearing and where further process remains available to her. Id. at 1207-08.

Turning to the second Mathews factor, the risk of erroneous deprivation, the record indicates that Respondents took Petitioner into immigration custody without pre-deprivation notice or a pre-deprivation hearing. Although an IJ subsequently found that Petitioner presents a risk of flight, Petitioner staunchly contests the IJ's bond denial, including on the ground that it does not represent one adjudicator's isolated error, but is a larger pattern. See Petition ¶¶ 26, 53-63, 77, 84-89, 96-97; id., Ex. 3 (compendium of bond denial decisions). Some district courts have expressed concerns about systemic-level issues affecting IJs and custody redeterminations, noting "the stream of cases returning to habeas courts in which [IJs] have ordered detentions without conducting the reasoned and individualized assessments that due process requires." Claros v. Albarran, No. 25-9473, 2026 WL 2364813, at *8 (N.D. Cal. Aug. 14, 2026) (also expressing concerns about the mass firings of IJs and the apparent renaming of IJs as "deportation judges"). Without expressing a view on the merits of this argument, the Court finds that the second Mathews factor favors neither party.

The third Mathews factor requires the Court to consider the Government's interest, and the Court is mindful that in the immigration

detention context, it "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Rodriguez Diaz, 53 F.4th at 1208 (internal quotation marks and citations omitted). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." Id. However, while the Government has a "significant" interest in enforcing its immigration laws, id. at 1209, that interest is diminished where, as here, Petitioner has a pending asylum application, lived in the community for over nine years while that application was pending, received employment authorization over two years ago, has filed state and federal taxes, and has no criminal record.

The effort and cost required to provide Petitioner with procedural safeguards before detention—rather than simply detaining her without a hearing—is minimal. See E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide [p]etitioner notice and hearing on [alternatives to detention] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue"). Accordingly, the third Mathews factor weighs somewhat in Petitioner's favor.

On balance, the Mathews factors tilt in Petitioner's favor. Respondents' detention of Petitioner without a pre-deprivation hearing violated her procedural due process rights.

### C. Remedy

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy. After applying the Mathews test, the Supreme Court "usually has held that the Constitution

requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R., 791 F. Supp. 3d at 1036.

Here, nothing in the record suggests such urgency. See Petition ¶¶ 5, 42, 94 (referencing Form I-213). ICE incidentally encountered Petitioner while she was waiting for a domestic flight and spent nearly four hours "build[ing] a file on [Petitioner] from scratch." Id. Petitioner has no criminal record, no failure to appear before any court or agency, and has lived in the United States for a decade, with a asylum application pending for nine years and years of work authorization past and remaining. See id. ¶¶ 60, 88. The Court finds that Petitioner's detention without a pre-deprivation hearing violated her due process rights and rendered her detention unlawful. When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. See Wamsley, 795 F. Supp. 3d at 1324.

To the extent Respondents argue that Petitioner is entitled only to a post-deprivation bond hearing, which she has since received, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, [s]he will already have suffered the injury he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also Wamsley, 795 F. Supp. 3d at 1324; Yao, 2026 WL 2666861, at *6 (ordering a noncitizen released where she was admitted to the United States on a nonimmigrant visa in 2024, timely applied for asylum, obtained work authorization, and was detained in July 2026 at Los Angeles International Airport upon arrival from a domestic flight without a warrant, prior notice, or a hearing; collecting cases finding that a post-detention bond hearing does not

rectify the harm of a due process violation because the petitioner will have already suffered the potentially erroneous detention). On this record, release is the appropriate remedy to place Petitioner in the position she would have enjoyed absent the due process violation. See Yao, 2026 WL 2666861, at *6 (ordering the same where the petitioner had received a post-deprivation custody redetermination under 8 C.F.R. § 1236).

The Court's order is limited to the procedural due process violation that has occurred. The Court declines to order Petitioner's additionally requested relief of a permanent injunction prohibiting Respondents from re-detaining her "absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention." Petition at 27. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court. This order addresses only the lawfulness of Petitioner's current detention, which began on August 4, 2026, and which the Court concludes violates the Fifth Amendment. Nothing in this order shall be construed as limiting Respondents' ability to lawfully re-detain Petitioner in the future in compliance with all applicable authorities and upon affording Petitioner all process she is due. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

## D. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See Petition at 27. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an

> application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

To the extent Petitioner desires to pursue this request, Petitioner should file an application requesting reasonable fees and costs under the EAJA within thirty (30) days.

## IV. ORDER

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is **GRANTED** in part as to Count One.

2. Count Two is **DISMISSED** without prejudice for failure to exhaust.

3. Respondents shall immediately release Petitioner Liping Lin (A# 216-334-824) from custody. Upon release, Respondents shall return Petitioner's personal belongings.

4. Within three (3) days, Respondents shall file a status report confirming compliance with paragraph 3.

///

///

///

///

5. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

Date: September 14, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge